UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

BANY REBECA MIRANDA BENAVIDEZ,

Petitioner,

v.

FERETI SEMAIA, et al.,

Respondents.

Case No. 5:26-cv-03232-SSC

MEMORANDUM AND ORDER

Consistent with the Court's order granting an unopposed habeas petition previously filed by Petitioner, Petitioner received an individualized bond hearing before an immigration judge, who determined that Petitioner was a flight risk and therefore denied bond. In this new habeas petition, Petitioner challenges that determination. However, she has failed to exhaust her administrative remedies. Petitioner also revives the challenge to re-detention brought in the original petition. That claim fails as well because the post-deprivation process already provided served to cure any deprivation. Petitioner's due process claim related to her conditions of confinement is not cognizable on habeas review.

**I**

On June 11, 2026, Petitioner Bany Rebeca Miranda Benavidez filed this petition for writ of habeas corpus by person in federal custody pursuant to 28 U.S.C. § 2241.  (ECF 1.)  Petitioner is in immigration detention in Adelanto, California.  (*Id.* at 4.)

This is Petitioner's second habeas petition.  Petitioner's previous petition was granted based on Respondents' non-opposition, and this Court enjoined Respondents from continuing to detain Petitioner unless no later than May 19, 2026, she was provided with an individualized bond hearing under 8 U.S.C. § 1226(a) at which the government must bear the burden of showing by clear and convincing evidence that Petitioner poses a flight risk or danger to the public, and the immigration judge (IJ) must exercise discretion to make an individualized determination whether Petitioner should be detained pending removal proceedings.  (ECF 1-5 at 4.)  Petitioner received a bond hearing on May 19, 2026.  (ECF 1-6.)  Specifically, the IJ denied bond, finding that Petitioner was a flight risk, which no amount of bond can mitigate.  (*Id.* at 1.)  Petitioner does not allege that Respondents failed to follow this Court's order.  Petitioner has provided no audio or transcript of the bond hearing for the Court to review.  Petitioner reserved her right to appeal the IJ's decision.  (*Id.* at 2.)

Referencing the bond denial, the new petition alleges that Petitioner is not a flight risk and that her "continuing detainment as a flight risk is not supported by the facts and law."  (ECF 1 at 10.)  Incorporating these allegations, Petitioner raises due process challenges and seeks release.  (*Id.* at 11–14.)  The petition brings four claims: (1) a due process claim arguing that Petitioner's release was arbitrarily revoked; (2) a claim for violation of 8 C.F.R. §§ 241.4(l), 241.13(i) in

2

revoking Petitioner's release; (3) a due process claim arguing that Petitioner's detention is arbitrary; and (4) a due process claim related to Petitioner's "punitive conditions of confinement, characterized by unlawful degrees of overcrowding and medical neglect[.]" (*Id.*)

On June 18, 2026, Respondents filed an answer. (ECF 8.) Respondents argue that the Court lacks jurisdiction to review the IJ's bond determination, that Petitioner has not shown that Respondents lacked authority to detain her, and that Petitioner has not exhausted her administrative remedies. (*Id.* at 3–4.) On June 22, 2026, Petitioner filed a reply. (ECF 9.)

The Court finds this matter appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15.

## II

Relief in the form of a writ of habeas corpus may be granted to a person in custody under the authority of the United States if the petitioner can show that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). The writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).

## III

The Court first addresses Petitioner's argument that Respondents violated 8 C.F.R. § 241.4(l) or 8 C.F.R. § 241.13(i) in revoking Petitioner's release. (ECF 1 at 12.) These regulations apply to noncitizens who are subject to final orders of removal. *See* 8 C.F.R. § 241.13(a) ("This section establishes special review procedures for those [noncitizens] who are subject to a final order of removal and are detained under the custody review procedures provided at § 241.4 after

3

the expiration of the removal period, where the [noncitizen] has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future."). Here, Petitioner's removal proceedings are ongoing. Petitioner has not been ordered removed. As such, these regulations do not apply and were not violated.

**IV**

Turning to Petitioner's due process arguments, the Court denies the petition. As above, this is a second petition challenging Petitioner's re-detention. Petitioner received a bond hearing consistent with the Court's order in *Benavidez v. Mullin*, No. 5:26-cv-02381-SSC (C.D. Cal. filed May 5, 2026). Even assuming, without deciding, that the government failed to comply with the statutory or regulatory requirements governing the initiation of Petitioner's custody, Petitioner has not shown that release from custody is an available remedy. The dispositive question in this habeas proceeding is not whether Petitioner's arrest was procedurally defective, but whether he is presently entitled to release from custody. *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 158 (1923). Petitioner is not. As the Supreme Court explained more than a century ago, "[a] writ of habeas corpus is not like an action to recover damages for an unlawful arrest or commitment, but its object is to ascertain whether the prisoner can lawfully be detained in custody; and if sufficient ground for his detention by the government is shown, he is not to be discharged for defects in the original arrest or commitment." *Id.* (citation modified). The Supreme Court reaffirmed that principle in *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1040 (1984). Petitioner has received a bond hearing and the present detention is therefore based on the ongoing

4

removal proceedings and the IJ's custody determination, rather than solely on the circumstances of the initial arrest. Whatever defect may have occurred in the initiation of Petitioner's custody, Petitioner has not shown that it renders the present detention unlawful or that release is the appropriate remedy. *See Tsendayush v. Bondi*, No. 5:26-CV-00970-SB-KES, 2026 WL 1880177, at \*2 (C.D. Cal. June 30, 2026) (declining to grant release based on alleged violations of the Immigration and Nationality Act (INA) and its implementing regulations and collecting cases ruling similarly); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022) (reasoning that under *Mathews v. Eldridge*, 424 U.S. 319 (1976), courts must "consider the process [petitioner] received [while detained]" and "the further process that was available to him"); *Aguilar v. Semaia*, No. 5:26-cv-00023-MCS-SSC, 2026 WL 166906, at \*4–5 (C.D. Cal. Jan. 16, 2026) (denying request for immediate release from immigration detention in light of post-detention process provided, including a bond hearing).

The IJ's order indicated that Petitioner reserved her appeal to the Board of Immigration Appeals (BIA). (ECF 1-6 at 2.) It is unclear whether Petitioner ultimately timely filed an appeal. The deadline to file an appeal to the BIA had not yet passed when the petition was filed. Petitioner's reply, filed after the deadline to appeal, suggests that no appeal was timely filed. (ECF 9 at 8 ("As Petitioner's bond decision was on May 19, 2026 and the thirty day filing period expired on June 18, 2026, any appeal at this time would be summarily dismissed by the BIA[.]").) Regardless, she has not exhausted her administrative remedies.

An immigration detainee who loses a bond hearing has a direct administrative remedy: appeal to the BIA. *See* 8 C.F.R. §§ 1003.1(b),

5

1003.19(f), 1003.38.  The BIA reviews *de novo* all "questions of law, discretion, and judgment" from the decisions of IJs.  8 C.F.R. § 1003.1(d)(3)(ii).  It also reviews for clear error any findings of fact, "including findings as to the credibility of testimony."  8 C.F.R. § 1003.1(d)(3)(i); *see Vitug v. Holder*, 723 F.3d 1056, 1063 (9th Cir. 2013).  As a result, the Ninth Circuit has held that the detainee must first "exhaust[] administrative remedies by appealing to the BIA before asking the federal district court to review the IJ's decision."  *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011).  Although exhaustion is not statutorily mandated under § 2241, "[a]s a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief[.]" *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012).

Indeed, every principal published Ninth Circuit decision on this subject has usually involved review of a final BIA decision—not an IJ's order standing alone.  *See, e.g., Martinez v. Clark*, 124 F.4th 775, 785–86 (9th Cir. 2024).  And even when exhaustion is later excused (for reasons to be discussed below), the petitioner has still at least appealed to the BIA.  *See, e.g., Singh v. Holder*, 638 F.3d 1196, 1200–01 (9th Cir. 2011).  These cases thus recognize that direct review of immigration detention decisions belongs with the BIA in the first instance—not federal habeas courts.

The three structural reasons on which the Ninth Circuit relies to enforce administrative exhaustion are present here, too.  *See Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007).  First, the BIA has subject-matter expertise in reviewing bond determinations, *see* 8 C.F.R. § 1003.1(b)(7)—expertise particularly valuable here given Petitioner's complaint that the IJ's order lacks adequate reasoning.  BIA review

6

would help generate the BIA's own order evaluating whether that explanation is adequate.

Second, if Petitioner could skip the BIA, then every noncitizen denied bond has a shortcut to federal court. That inverts the administrative remedy scheme and is precisely the "improper shortcut" that the Ninth Circuit prohibits. *Leonardo*, 646 F.3d at 1160. After all, the IJ's order is not the agency's final word. It is the first step in a process designed to produce a reasoned decision at the administrative appellate level. Only then would the administrative record be complete. And only then would a federal court have the considered agency decision that federal courts can review—especially considering that it is limited even more by jurisdictional limits in 8 U.S.C. § 1226(e). *See generally Martinez*, 124 F.4th at 785–86.

Third and last, the BIA can correct the alleged deficiencies Petitioner identifies, if warranted. *See, e.g., Aden v. Nielsen*, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7, 2019) ("[T]he BIA is capable of . . . determining whether the government has carried its burden of demonstrating by clear and convincing evidence that [petitioner] is a current danger [or flight risk] and must be detained.") (citing *Morgan v. Gonzales*, 495 F.3d 1084, 1090 n.2 (9th Cir. 2007)).

As noted above, exhaustion in immigration habeas cases is prudential, not jurisdictional. *See Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Still, federal courts excuse it only where "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004). Those exceptions are necessarily narrow, and the Ninth Circuit has applied them only where

the detainee's challenge is essentially to the legal framework itself—not to how a particular IJ applied that framework in a particular case.

In *Singh*, for instance, the court bypassed exhaustion on what standard of proof the Constitution requires at prolonged-detention hearings for those mandatorily detained. 638 F.3d at 1203 n.3, 1205. The court explained that this was a "purely legal" issue for which "a record of administrative appeal is not germane[,]" that waiving exhaustion would not encourage deliberate bypass because the legal question—once resolved—would not recur, and that the BIA could not obviate the need for a federal ruling. *Id.* The court also emphasized that Singh had been detained for nearly four years. *Id.* Similarly, in *Hernandez*, the court waived exhaustion for a class-wide challenge to the bond framework—specifically, whether IJs must consider ability to pay and alternatives to detention. 872 F.3d at 988–89. There again, the claims were "purely legal," the BIA's position was fixed through its own precedents, and the challenge raised a discrete systemic question that would not recur once resolved. *Id.*

Petitioner's claim resembles neither those cases, nor does the petition address exhaustion. In her reply, Petitioner argues that prudential exhaustion is not required here because "administrative review is unlikely to meaningfully contribute to the Court's analysis or correct error in a particular case, especially where recent agency practice suggests that agency adjudicators are not exercising independent expertise on the issue presented." (ECF 9 at 7 (citing *Puga*, 488 F.3d at 815).) The reply further argues that because the deadline to file an appeal has since passed—after she filed this petition—any appeal at this time would be summarily dismissed by the

8

BIA.  (*Id.* at 8.)  Petitioner has not sufficiently established that waiver is warranted.

To the extent Petitioner challenges how the IJ applied discretionary detention factors to his case, that is a case-specific claim about the adequacy of one decision in one proceeding—exactly the kind of claim the BIA was designed to review.  The BIA has adopted no position foreclosing relief on such a claim.  And Petitioner's does not approach the extended duration that supported *Singh*'s excusal.

The Court recognizes that continued detention is not cost-free.  But every noncitizen denied bond by an IJ is detained during the pendency of an appeal.  That is intrinsic not only to appellate review but inherent in the system Congress designed.  So if the ordinary delay of administrative review—and its corresponding extension of a petitioner's detention—constituted "irreparable injury" sufficient to excuse exhaustion, then it would be excused in every bond denial.  *Leonardo*'s default rule would be a dead letter.  *See Yu v. Noem*, 2026 WL 1042213, at *3 (E.D. Cal. Apr. 17, 2026) ("[E]xcusing exhaustion on that basis would cause the exception to swallow the rule.").  So while the time needed to complete a BIA appeal may tip against enforcement of exhaustion in some cases with compelling facts, it is not enough on its own in the mine run of immigration detentions.  *See McCarthy v. Madigan*, 503 U.S. 140, 147–49 (1992); *Leonardo*, 646 F.3d at 1160.  So it is here.

## V

Petitioner's due process claim related to her "punitive conditions of confinement, characterized by unlawful degrees of overcrowding and medical neglect" (ECF 1 at 13–14) is not cognizable on habeas review.

Petitioner is correct that civil detention may violate the Constitution if it is punitive.  *See Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004) ("At a bare minimum, then, an individual detained under civil process—like an individual accused but not convicted of a crime—cannot be subjected to conditions that 'amount to punishment.'" (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979))); *Wong Wing v. United States*, 163 U.S. 228, 237–38 (1896) (finding civil detention of a removeable noncitizen violates the Constitution if it is punitive).

But such a claim does not challenge "the fact or duration of [her] confinement" and should instead be brought through a civil rights action.  *See Quiroz v. Noem*, No. 1:25-cv-00765-KES-SAB-HC, 2025 WL 3551686, at *6 (E.D. Cal. Dec. 11, 2025) (dismissing from habeas petition civil immigration detainee's claim that his detention conditions were punitive and violated due process because such a conditions-of-confinement claim is not cognizable on habeas); *Gevorg v. Warden of Golden State Annex Det. Facility*, No. 1:25-cv-00992-HBK (HC), 2025 WL 3496436, at *8 (E.D. Cal. Dec. 5, 2025) (dismissing civil immigration detainee's habeas petition but noting that "while not cognizable on habeas review, nothing in this Order prevents Petitioner from asserting a separate condition of confinement claim to the extent he submits the conditions versus the fact of his detention violate the Constitution").

For these reasons, Petitioner's conditions-of-confinement due process claim is not cognizable on habeas.  Any such claim that Petitioner may want to raise in the future should be brought in a civil rights action.

**ORDER**

For the reasons set forth above, **IT IS ORDERED** that Judgment shall be entered denying the petition.

DATED: July 27, 2026

HONORABLE STEPHANIE S. CHRISTENSEN
UNITED STATES MAGISTRATE JUDGE